AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☑ Original ☐ Duplicate


CLERK'S OFFICE
A TRUE COPY
Sep 03, 2024
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 24-M-487 (SCD)
DNA Sample by Buccal Swab from )
Joseph T. Harrison )
(DOB xx/xx/1989) )

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Eastern _____ District of _____ Wisconsin _____
*(identify the person or describe the property to be searched and give its location):*

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before ____ 9-17-24 ____ *(not to exceed 14 days)*
X in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___ Honorable Stephen C. Dries, U.S. Magistrate Judge ___
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued: ___ 9-03-24. 5:00 pm ___            *Stephen C. Dries*
                                                         *Judge's signature*

City and state: ___ Milwaukee, WI ___            Honorable Stephen C. Dries, U.S. Magistrate Judge
                                                         *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of : |
|---|

| Inventory of the property taken and name(s) of any person(s) seized: |
|---|

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A
### Person to Be Searched

The search of Joseph T. HARRISON's bodily substances that may constitute evidence of the commission of a crime, specifically, saliva.

Date of Birth:            XX/XX/1989

FBI number              40835PC1

Currently Residing:       Dodge Correctional Institution
                          1 W Lincoln Street
                          Waupun, WI 53963

## ATTACHMENT B
### Particular Things to be Seized

Joseph T. HARRISON's saliva.



CLERK'S OFFICE
A TRUE COPY
Sep 03, 2024
s/ Mariah Kauder
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 24-M-487 (SCD)
 )
DNA Sample by Buccal Swab from )
Joseph T. Harrison )
(DOB xx/xx/1989) )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922 (g)(1) | unlawful possession of a firearm by a convicted felon |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

PORCHIA LEWAND   Digitally signed by PORCHIA LEWAND
Date: 2024.08.28 15:16:56 -05'00'

*Applicant's signature*

Porchia S. Lewand, Assistant United States Attorney

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: ___8-30-24___

*Judge's signature*

City and state: Milwaukee, WI                    Honorable Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

# AFFIDAVIT

STATE OF WISCONSIN    )
                               ) ss.
La Crosse  COUNTY       )

I, Investigator Andrew Tolvstad, being first duly sworn, hereby depose and state as follows:

## Introduction

I am an Investigator and have been employed as a sworn law enforcement officer with La Crosse Police Department since 2011. The La Crosse Police Department maintains jurisdiction in  La Crosse County, Wisconsin, which is in the Western District of Wisconsin.

I am submitting this affidavit for the purpose of establishing probable cause in support of the search of the person of Joseph T. Harrison, date of birth XX/XX/1989, and the seizure of a sample of DNA present in saliva and skin cells from inside of Joseph T. Harrison's mouth for the purpose of analyzing the sample for DNA and comparing same to DNA that has been or may be recovered from a .22 caliber Beretta handgun seized from a vehicle that Harrison was operating on April 9, 2024. Additionally, prior to his arrest on April 9, two citizens reported that Harrison brandished and pointed a firearm at them. On this date, Harrison was a convicted felon.

Based on the facts set forth in further detail below, I believe there is probable cause to conclude that Harrison's DNA will provide evidence of a crime pursuant to Rule 41(c), specifically, unlawful possession of a firearm by a convicted felon, in

1

violation of 18 U.S.C. § 922 (g)(1). I further believe that such DNA will be found upon the person of Joseph T. Harrison. Accordingly, I respectfully request a warrant to search Joseph T. Harrison.

The collection of DNA samples will be accomplished in a manner that is minimally intrusive and poses no risk of harm to Joseph T. Harrison. Specifically, I, or another law enforcement official, will obtain Joseph T. Harrison's DNA by inserting one or more buccal (oral) swabs into his mouth and running each swab along his cheeks and inside of his lips.

## Background

As an Investigator with the La Crosse Police Department my duties include, among other things, the investigation of crimes involving firearms. The investigation of firearm crimes often involves the forensic analysis of physical evidence. In particular, the analysis of evidence for deoxyribonucleic acid (DNA) can play a critical role in the investigation of crimes involving firearms offenses.

I have participated in multiple investigations in which DNA reference samples collected from suspects either voluntarily or through a search warrant were compared against DNA samples collected from physical evidence relevant to the cases. These comparisons can be of great value in either including or excluding suspects from cases but are not always dispositive on the issue of identification.

The information contained in this affidavit was obtained through the investigative efforts of the La Crosse Police Department. I believe that the information provided by the collaborating law enforcement officers described herein to be true,

2

accurate, and reliable as it was collected in the course of their official duties and investigation into this matter. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrant and does not set forth all of my knowledge about this matter.

## Investigation

On April 9, 2024, at approximately 9:55 p.m., La Crosse County Emergency Dispatch received a call from McKenzie Schlicht who reported that a gun had been pulled on someone at her home at 848 Winneshiek Road in the city of La Crosse, WI.

Officers Beardmore, Peterson, and Armour of the La Crosse Police Department responded to the address at Winneshiek Road. The officers met with and took accounts from McKenzie Schlicht (McKenzie), Valynn Schlicht (Valynn), John Schlicht (John), and Savannah Woods (Savannah) at the residence.

Officer Beardmore spoke to Valynn. Valynn told the officer that "I'm the one he had a gun on. I'm [McKenzie's] mom." Officer Beardmore observed Valynn to be speaking very fast and appeared to him to be worked up from the incident. Valynn told Officer Beardmore that her daughter McKenzie, and her neighbor/friend Savannah Woods had been having some issues recently. On April 9, Valynn and John (McKenzie's father) were visiting McKenzie for several hours at her home. Earlier in the night, Savannah, her brother, and her brother's girlfriend, were over and they were all talking. Valynn stated that the parties then separated for the night.

La Crosse Housing Authority surveillance video collected from the area appears to verify Valynn's account thus far, showing at approximately 5:19 p.m. on April 9, a male and female, walk into the back yard of 848 Winneshiek Rd. and speak with John, Valynn, and McKenzie. The male subject appears to be a black male in a dark jacket with the hood up, dark colored pants, and black shoes.

### Valynn Schlicht's Statement

Valynn advised she and John were parked on St. James Street in their truck, a white 2005 Chevy Silverado, approximately five minutes prior to the call to dispatch. John was in the driver's seat and Valynn was in the passenger seat. She stated that they drove and got to the intersection of St. James Street and Winneshiek Rd., at which time the Savannah's brother (the male) approached on foot "cutting" them off. The male talked about his sister and questioned John and Valynn about talking to Savannah. He then walked away toward McKenzie's residence. Valynn told John to turn around, concerned about the male causing an altercation with McKenzie, and they pulled in front of McKenzie's residence at 848 Winneshiek Rd. into a parking spot. Valynn advised that the male approached their vehicle on the driver's side and John rolled down the window to talk to him. The male asked them why they were back near his sister and told them "I thought we were all good, I told you to leave my effing sister alone." Valynn stated he was escalating and was yelling. Valynn described that he then pulled a black firearm from somewhere on his person, leaned his body into the window, and reached past John, and pointed the gun at her face within twelve inches of her, holding the gun in his right hand with the grip facing the rear of the vehicle in a

4

"tilted" fashion. She said he racked the gun after he was already completely through the window with it pointing in her direction. Valynn believed the firearm was real. Valynn then said he then took his arm out of the vehicle and began appearing to hide the gun in his sleeve. He then, once again, acted like he was going to pull the gun on her, as he intentionally flashed it a second time. Valynn stated she told the him that they were going to call the police, at which time he got into his girlfriend's car with his girlfriend and left the area as she was yelling at him to "get in the car". Valynn reported she was fearful.

### John Schlicht's Statement

Officer Peterson spoke with John, McKenzie's father. John stated that earlier in the night, when they all had been hanging out and talking, Savannah's brother had identified himself to John as "Lil Joe."

Regarding when the firearm was pulled on them, John described that his window was rolled down while they were parked at McKenzie's residence. The male was standing directly outside of the front driver's door. John stated the male, pulled a handgun out twice and that John saw it three times. The first time the male displayed the handgun, John described the male as lifting the front of his shirt and John seeing a silver handgun tucked into the front of the male's pants. The second time the male pulled out the handgun, John described it as the male grabbing the handgun with his left hand and holding it up by the male's chest. The third time the male pulled out the handgun, John described the male as grabbing the handgun with his left hand, pulling it out, reaching the handgun through the front driver's side open window and holding

5

it in front of John's face. John stated the handgun was so close to his face that he had to lean his head back. John described the male as holding the handgun sideways. John stated the handgun was pointed directly at his wife in the passenger seat. John believed the male held the handgun out for approximately three or four seconds. At this point, the male was still ranting and said something along the lines of "leave my fucking sister alone." John stated the male also said something along the lines of "if you don't leave my sister alone, I'm gonna put a cap in your ass." John stated the male said this towards Valynn. John stated he was fearful for his safety and feared the male might shoot the handgun. Because the handgun was orientated sideways with the top of the slide pointed towards John, he could not see whether or not the male's finger was on the trigger. John stated, the male's girlfriend then said, "Let's go, let's go." John observed the male get into a sedan parked near his truck. The sedan then left.

John described the firearm to Officer Peterson as being a longer, silver, semi-auto handgun with a rounded slide, and that it may have a suppressor on the barrel. He described the vehicle the male got into as a darker color and possibly blue or gray, small 4-door sedan that sat low to the ground.

### McKenzie Schlicht's Statement

McKenzie advised that just after her parents left her residence just before 9:55 p.m., Savannah came to her front door, and they began talking about the issues they were having between them. She stated, shortly after this, her mother, Valynn, had ran up to the front door and told them Savannah's brother had just pulled a gun on her and

John. McKenzie stated that she saw them leave the area at this time in a vehicle. She described the vehicle as a dark colored four-door car with unknown license plates.

The next day, April 10, McKenzie shared two photos with the officers that were taken from the private surveillance camera in the window of her residence that faces into the parking lot. It only recorded still images, no video. The first photo is dated April 9 at 5:26:16 p.m. It shows what appears to be a blue Chevrolet car similar to the vehicle that Harrison is eventually arrested in. The second image is dated April 9 at 9:51:20 p.m. and shows a female that appears to be Valynn coming back towards McKenzie's front door. From the photo, it appears that she may be taking a longer step, which would be consistent with a person's gait if they were running. There are two vehicles parked in the parking lot facing north behind her with their headlights on, however I could not distinguish color, make or model.

### Savannah Woods's Statement

Officer Beardmore spoke to Savannah. Savannah explained that her brother, identified as Joseph Harrison, and his girlfriend, identified as Virena Bell, had come to town approximately a week ago to visit their mother. On April 9, Savannah went over to her mother's house for most of the day, because her mother was helping her take care of her child. Savannah said Harrison was back and forth from the residence all day, and the last time she saw him was maybe around noon, prior to this incident.

Savannah advised Virena and Harrison came back to her mother's residence around "8:30, 8:00," (p.m.). Once Virena and Harrison got back, Savannah asked Virena if she would drive her and her daughter over to McKenzie's house so she could speak

with her cordially about the issues they have been having. Savannah explained McKenzie and Valynn believed she had reported McKenzie to housing because her boyfriend has been living with her, but Savannah said she did not. Savannah said she arrived at McKenzie's house and went inside with her daughter to speak with her. Savannah explained, "next thing, I'm in McKenzie's house talking. Her mom hops out and comes running, talking about, oh, he just pulled a gun on me!"

Savannah then went outside with her daughter and got back into the rear of the vehicle driven by Virena. At this time, Harrison got into the front passenger seat of the vehicle. Virena then drove off with Harrison, Savannah, and Savannah's daughter. Savannah said she told Virena to drop her back off at her mother's house. Savannah said as Virena was driving, Harrison began reaching over to the steering wheel and began maneuvering the steering wheel in an aggressive manner. Savannah said during this time, Harrison was saying, "You're not going to let me go to jail!" Savannah eventually demanded to be let out of the vehicle, so Virena stopped the vehicle in the area of Reinhart Foods. Savannah then walked her and her daughter back to 848 Winneshiek Road to speak with McKenzie, Valynn, and John about what had just occurred with her brother.

Savannah advised that Harrison had recently been released from prison. Officer Beardmore was able to confirm his identity as Joseph T. Harrison, DOB XX/XX/1989, and learned Joseph is on WI DOC supervision and on GPS monitoring.

8

## Use of GPS monitoring to track and locate Harrison

Officer Armour, contacted the WI DOC monitoring center. They were able to provide GPS coordinates for Harrison's monitor's location. These coordinates placed him in the area of the reported incident during the time frame reported by the witnesses.

Officer Armour spoke with WI DOC Operator #5950 who advised the following regarding the accuracy of the GPS monitors: depending on factors to include signal strength and the structures around, the GPS points can be accurate within a range from twenty to a couple hundred feet and are generally on the lower and more accurate end of this range while the GPS is in pursuit mode.

From 9:45 p.m. to 9:51 p.m. on April 9, 2024, GPS coordinates indicated that Harrison's monitor was in the area of 913 Wood St. Using the measure function on Google Maps, 913 Wood St. is approximately 220 feet from McKenzie's address at 848 Winneshiek Road. DOC staff was also able to provide near-real time locations for Harrison's monitor in order to track him further, placing the GPS monitor into "Pursuit Mode". DOC also issued a parole violation warrant for Harrison's arrest.

On April 10, 2024, at approximately 12:13 am hours, the DOC monitoring center advised that Harrison's monitor was coming into the area of Gateway Ct. and St. James St. Gateway court is the first street east of the Schuh Homes Neighborhood where this incident occurred. It is a dead-end street that runs north and south along the eastern edge of the neighborhood. DOC employee Jason Pieters relayed to Officer Armour that around approximately 12:19 am, Harrison's GPS monitor was pinging in the northwest

9

corner of the parking lot of Crown Cork and Seal, 1501 St. James St. Using the measure function on Google Maps, this location is approximately 800 feet from 848 Winneshiek Rd. This business is on the east side of Gateway court, directly east of the Schuh Homes Neighborhood.

A short time later, officers in the area observed a female identified as Virena Bell jump the fence into the Schuh home neighborhood and was detained by Officers Beardmore and Peterson. She told officers that she was going to see Harrison's mother. Dispatch checked for vehicles registered to Virena and found that she owned a blue 2013 Chevrolet Cruze bearing WI license plates AMY9111. During this time, DOC staff advised Harrison's monitor was stationary in the parking lot of 1501 St. James St.

While officers were attempting to get eyes on the vehicle to see if Harrison was in it, DOC staff advised Harrison's GPS monitor left the area. It eventually stopped at 2344 Highway 16 in La Crosse. It again left this address at approximately 12:58 am, going north on Highway 16. Officers in the area were able to locate the Chevrolet Cruze going northbound.

At approximately 1:01 am, Officers conducted a high-risk traffic stop on the vehicle on Highway 16 near the Valley View mall. The vehicle stopped slowly, going approximately two blocks after officer's emergency lights were initiated. Harrison was identified as the driver and sole occupant of the vehicle. He was compliant and placed under arrest.

10

After the vehicle was cleared of any people, Officers LaBrec and Jelinski located a Beretta .22 caliber handgun in plain view under the driver's seat where Harrison had been seated. The handgun was found to be loaded and have a defaced serial number. Harrison was subsequently arrested for Felon in Possession of a Firearm, 1st Degree Recklessly Endangering Safety, Carrying a Concealed Weapon, and Disorderly Conduct while Armed.

Harrison did not wish to speak with police about the incident and denied possession of anything in the vehicle. He did not consent to buccal swabs being taken from his person for comparison to swabs taken from the seized firearm.

Officer Armour later received a document of Joseph's GPS data points. Some notable time points for his monitor are on April 9, 2024, from 5:00 until 5:15 p.m., showing the GPS monitor was at 1018 Redbird Court in La Crosse. It should be noted this is his mother's, Judy Brown's, address. At 5:16 p.m. to 5:18 p.m., the GPS shows at 913 Wood Street. There are no points until 5:31 p.m., when the GPS is at 855 Winneshiek Road. The next point is at 5:32 p.m. when it shows at 1111 Island St., then at 5:33 p.m., at 800 Monitor St. Again, using the measure function on Google Maps, 913 Wood St. is approximately 220 feet from McKenzie's address at 848 Winneshiek Road, and 855 Winneshiek is approximately 250 feet from 848 Winneshiek Rd. These GPS time stamps appear to be match surveillance footage timestamps from the video collected from the surveillance which show a person believed to be Joseph Harrison in the back yard of 848 Winneshiek Rd. Later, at approximately 9:15 p.m., his GPS is at 1016 Redbird Court. At 9:40 p.m., his GPS is at 1013 Redbird Court. At 9:42 p.m. to 9:44 p.m., GPS is at 1018

Redbird Court. At 9:45 to 9:51 p.m., his GPS is showing again at 913 Wood Street, which was the same address the GPS showed when Harrison was believed to be in the backyard of 848 Winneshiek Road. At 9:52 p.m., the GPS is at 1502 St. James Street. At 9:53 and 9:54 p.m., the GPS is at an address on St. James Street. At 9:55 p.m., the GPS is somewhere along River Valley Drive.

### Criminal History

I have reviewed Harrison's criminal history. On the date of April 9, 2024, Harrison was convicted of at least one crime punishable by imprisonment for a term exceeding one year, including the following:

- 2nd Degree Sexual Assault/Use of Force, a class C felony, Wisconsin Statutes 940.225(2)(a), on October 23, 2007 (Dane case 2007CF000670).

- Sex Registry Violation, a class H felony, Wisconsin Statutes 301.45(6)(a)1 on July 18, 2019 (Dane County case 2019CF000587).

- Possess w/Intent-Cocaine (<1-5g), a class F felony, Wisconsin Statutes 961.41(1m)(cm)1r on July 21, 2008 (Dane County case 2008CF000013).

Harrison served a sentence of imprisonment for a term exceeding one year for his conviction in at least Dane County case 2007CF000670[1].

Harrison was revoked on his probation sentence and was moved from the La Crosse County Jail to Dodge Correctional Institution in Waupun, Wisconsin on August 5, 2024. Harrison's person is now located in the Eastern District of Wisconsin.

---

[1] The sentence of imprisonment exceeding a year was imposed when he was revoked from his initial sentence of probation.

## CONCLUSION

Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41.

I further request that La Crosse Police Department, or designated law enforcement partners, be permitted to collect a DNA sample from Joseph T. Harrison pursuant to the warrant.

I further request that the Court authorize execution of the warrant at any time of the day or night.

I swear that these statements are true and accurate to the best of my knowledge.

*/s/ Andrew Tolvstad*
Andrew Tolvstad, Investigator

Sworn telephonically 9-3-24.

## ATTACHMENT A
### Person to Be Searched

The search of Joseph T. HARRISON's bodily substances that may constitute evidence of the commission of a crime, specifically, saliva.

Date of Birth:                XX/XX/1989

FBI number                    40835PC1

Currently Residing:           Dodge Correctional Institution
                              1 W Lincoln Street
                              Waupun, WI 53963

**ATTACHMENT B**
**Particular Things to be Seized**

Joseph T. HARRISON's saliva.